Jasen, J. (dissenting).
Trooper Gerard Boss of the New York State Police was on routine patrol on the Taconic State Parkway when he observed defendant walking backwards on the paved portion of the highway, carrying a large sign reading “ EXPO 67 ’’[1] The officer stopped the patrol car, opened the door on the passenger side, and said, “ Get in. You’re under arrest for being a pedestrian on the highway.” Trooper Boss ordered defendant to place his hands on the dashboard of the car, and then drove a short distance up the parkway to a grassy area where he could safely park his patrol car off the highway.
There, the trooper frisked defendant and felt a small hard object in one of defendant’s pockets. Believing the object to be a razor, Trooper Boss removed the object and identified it as a block of hashish. After taking the hashish, the trooper directed defendant to get out of the patrol car and stand beside the car with his hands on the roof. The trooper then searched a knap *1007 sack which defendant had been holding on his lap, and discovered marijuana and a brass-bowled pipe inside.
The defendant’s motion to suppress the narcotics and pipe taken from him was granted under constraint of our decision in People v. Marsh (20 N Y 2d 98).
Ultimately, we are concerned with only one of the items seized, the hashish, for if it was properly seized the trooper was entitled to arrest the defendant for its possession, and the search outside the patrol car was entirely valid as incidental to that arrest.
The majority agrees that defendant’s arrest for a traffic infraction (hitchhiking)[2] was proper, but holds that our decision in People v. Marsh (20 N Y 2d 98, supra) invalidates the search incidental to that arrest.
The majority in Marsh (supra) reasoned: “ A motorist who exceeds the speed limit does not thereby indicate any propensity for violence or iniquity, and the officer who stops the speeder has not even the slightest cause for thinking that he is in danger of being assaulted. We can only conclude that, even though the ‘ rules of criminal law are generally applicable ’ to traffic violations (People v. Byron, 17 N Y 2d 64, 66), the Legislature never intended to authorize a search of a traffic offender unless, when the vehicle is stopped, there are reasonable grounds for suspecting that the officer is in danger or there is probable cause for believing that the offender is guilty of a crime rather than merely a simple traffic infraction.” (Id., at p. 101.)
Admittedly, defendant was arrested for a traffic infraction and the arresting trooper did not have probable cause for believing at the moment of arrest that defendant was guilty of anything more than hitchhiking. It does not follow, however, that the search of defendant incidental to his arrest for hitchhiking was constitutionally unreasonable or prohibited by our decision in Marsh (supra).
While this 'court has in effect judicially noticed in Marsh (supra) that motorists exceeding the speed limit do not indicate “ any propensity for violence or iniquity ”, quite the opposite is true as to a hitchhiker. The hazards of hitchhiking are well known. While every hitchhiker does not possess evil inten *1008 tions, tragic case histories of assaults, robberies, rapes and murders committed by hitchhikers demonstrate that a significant number of them are potentially dangerous.[3] As a class, hitchhikers certainly represent a demonstrable risk of violence, and this danger, has been recognized by the Parkway Commission in making hitchhiking unlawful for the protection of motorists. The American Automobile Association, New York State Thruway Authority, and law enforcement agencies condemn the practice. Movies have been produced whose theme, if not purpose, has been the showing of the frightening consequences of stopping for hitchhikers. Seldom has there been such unanimity of opinion, and it is all to the effect that picking up hitchhikers is a hazard that good sense dictates must be avoided.
However, the very nature of Trooper Boss’ job did not permit him the luxury of exercising the caution which is so uniformly urged on everyone else. As defendant concedes, issuance of a traffic summons to a nomadic hitchhiker would be an exercise in futility since the hitchhiker would continue blithely on his way and not be amenable to the powers of the local court. Here, defendant was on his way to Canada and carried a large sign announcing that fact. Moreover, issuance of a summons would not effectively put a halt to the violation, since the hitchhiker would be left on the same parkway to continue his objectionable conduct as before. Trooper Boss, therefore, had no alternative but to arrest defendant, remove him from the parkway, and transport him to the nearest Magistrate.
If we recognize the necessity for a police officer to take hitchhikers into his car, then we must also recognize the officer’s right to protect himself against the consequences of that necessity. The court recognized this fundamental corollary in People v. Rivera (14 N Y 2d 441, 446) where we wrote: “If we recognize the authority of the police to stop a person and inquire concerning unusual street events we are required to recognize the hazards involved in this kind of public duty. The answer *1009 to the question propounded by the policeman may be a bullet; in any case the exposure to danger could be very great. We think the frisk is a reasonable and constitutionally permissible precaution to minimize that danger. We ought not, in deciding what is reasonable, close our eyes to the actualities of street dangers in performing this kind of public duty. ’ ’
Here, the trooper recognized the risk inherent in picking up a hitchhiker on the highway, and, therefore, ordered him to place his hands in full view on the dashboard. After reaching a suitable place on the parkway to pull off the road, he frisked defendant for a weapon. The trooper withdrew the hashish from defendant’s pocket believing it to be a straight razor. It is, therefore, abundantly clear that the trooper was simply protecting himself in a responsible and competent manner. Of course, once the hashish was discovered during the frisk of defendant’s outer clothing, the trooper then had probable cause to search defendant’s knapsack.
That this course of conduct is constitutionally permissible cannot be doubted since a similar reasonable frisk was specifically approved by the United States Supreme Court in Terry v. Ohio (392 U. S.l).
Marsh (supra) is clearly distinguishable from this case for in Marsh the officer was searching for pieces of paper and books of matches. Here, the nature of the trooper’s search is consistent only with a search for weapons. The basic premise of Marsh is that motorists are a class of persons who “ indicate ” no “ propensity for violence or iniquity ”, and that, therefore, a police officer has no need to search a motorist charged with a traffic violation. However, a hitchhiker, unlike a motorist, is generally recognized to possess dangerous propensities for violence.
I conclude, therefore, that the rationale of Marsh (supra) should not extend to the situation where, as here, the arresting officer is reasonably required to conduct a search for his personal safety. To allow less than the reasonable frisk accomplished by the trooper in this case will handcuff police officers in the performance of their duties and expose them needlessly and unjustifiably to the risk of serious bodily injury or death at the hands of potentially dangerous individuals on our highways.
Accordingly, I would reverse the order appealed from and deny the motion to suppress.
Order affirmed, etc.

. The World’s Fair held in Montreal, Canada, in 1967.

. The offense of being a pedestrian on the highway (Rules and Regulations of the East Hudson Parkway Authority, [21 ÜSTYCRR] § 152.11) clearly includes what is commonly known as hitchhiking. There can be no doubt that defendant was hitchhiking for he admits in his affidavit in support of the motion to suppress that he was hitchhiking to Canada.

. A recent survey conducted by the New York State Police disclosed that 380 persons were arrested by the State Police during April, 1969 for hitchhiking. Of the 380 persons arrested, 91 individuals, or nearly 24% of those arrested, were wanted for or charged with offenses other than hitchhiking. Those arrested also included 15 missing or runaway persons. Approximately one quarter of those persons arrested for hitchhiking, therefore, had reason to resist arrest or to attempt to escape in addition to the minor punishment which they might anticipate for their hitchhiking offense.